## COLBY *vs.* CATO'S ADM'R.

[BILL IN EQUITY TO ENJOIN MORTGAGE SALE.]

*Mortgage, lands subject to, sale of part of, and payment of purchase on mortgage debt; when does not release parcel sold from mortgage.*—A deed in the nature of a mortgage to secure the paym-nt of certain enumerated debts, creates an incumbrance on the whole property conveyed for the whole of the indebtedness secured. If the mortgagor sell a portion of the land thus incumbered to a purchaser who had constructive, though not actual, notice of the mortgagee, and transfers the notes of the vendee for the purchase-money to one of the mortgage creditors, to be applied to the reduction of the mortgage debts, the payment of such notes by the purchaser to one of the mortgage creditors does not release the land thus sold from the mortgage, unless it was so agreed between the purchaser and the parties to the mortgage.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. B. B. McCRAW.

The facts are sufficiently stated in the opinion.

JNO. GILL SHORTER, and S. H. DENT, for appellant.—As Cato paid the money, in ignorance of the mortgage, though its record was constructive notice to him, and as Mrs. Colby, the executrix, received the money in ignorance of the fact that the note was given for the lot covered by the mortgage, the transaction was the same as if Cato had paid the money on the note in the hands of another person who held no mortgage. It can not be considered as an estoppel of the estate of Colby.

The conduct which precludes a party must be inconsistent with the right which he afterwards sets up, and must have induced the action by the other party to his detriment. 21 Ala. 424; 23 Ala. 393; 24 Ala. 446; 2 Hill, 219; 3 Hill, 215; 5 New York, 394; 6 New York, 236; 5 Denio, 154; 8 Wend. 480; 10 Bart. 432.

Nor can a party be estopped unless *advised* of his rights. 10 Ohio, 288. Nor when there has been no intention to mislead, and the other party is not actually misled.—10 N. Y. 402.

If Mrs. Colby, as *executrix*, had the right to release the lots from the mortgage lien on payment of the money by Cato, with full knowledge of all the facts, (which is not admitted,) the proof shows that she did not intend to do it, and thus give up a valuable security for the large debt due the estate by Cook. The mortgage debt, with interest to 1861, amounted to about $9,000. It was her duty to receive, if offered, additional securities, but not to give up or release any security she had,—much less a valid mortgage lien on real estate. And the court will not suppose that she would, as executrix, accept Confederate money from Cato in payment of his note, and give Cook credit for it on a gold debt, dollar for dollar, and also release the mortgage security she held over the lots. The inference, rather, is that, considering the mortgage security inadequate, she accepted Confederate currency from Cato in payment of his note from importunity or necessity. No other payment was received on Cook's indebtedness to the estate than

these Confederate payments made by Cato in partial amounts from 1861 to 1864, and during the whole period from 1859 down to 1867, no steps were taken to foreclose the mortgage, the executrix, no doubt, during the war, being unwilling to sell the property for Confederate currency, and afterwards waiting for a favorable opportunity to expose it in the market.

As the mortgage from Cook to Colby was on the record, it was notice to Cato, and if he paid the purchase-money for two of the lots subsequently bought by him of Cook, the payment was voluntary, and, if now a misfortune, it was the result of his own acts, uncontrolled and unaffected in any way by the act or deed of the executrix of Colby's estate. The payments to Cato's estate stand, in the eye of the law, precisely as the payment to the $486.05, which was received by the attaching creditor of Cook; and the court can no more order the estate of Colby to refund than it can the attaching creditor of Cook.

The principle, " *ex æquo et bono*," has no application in this case, but that of " *ex mora* " has.

J. L. PUGH, *contra.*—The executrix was entitled to the security of the mortgage on the real estate, but was not entitled to that security and also to the notes of Cato given to Cook for the same real estate described in the mortgage.

Cato had a good defense against the purchase-money notes in the hands of Colby, the assignee thereof. If Colby had foreclosed his mortgage on the real estate before collecting the notes Cato made to Cook, can it be insisted that Colby could have gone on Cato for payment of his purchase-money note to Cook.

If the notes of Cato would have been extinguished by a foreclosure of the mortgage before calling on Cato for payment thereof, how does the payment of the notes by Cato to Colby before foreclosure give Colby any right to the money Cato paid the executrix?

It is wholly immaterial that the executrix did not know that the notes she held on Cato were given for the real estate mortgaged. The fact is so, and that is sufficient. The

executrix will not be permitted, by a court of chancery, to accept from Cato the *entire consideration* of Cato's notes, as a security for Cook's debt to Colby, and then withhold from Cato the money paid by him, in ignorance, on the notes, whose consideration she thus attempts to appropriate.

A court of chancery, in adjusting the equities of the parties, will make the executrix of the mortgagee refund to Cato the money which, *ex æquo et bono*, belongs to him, before allowing the executrix to deprive Cato of the only consideration he ever had for the notes he paid her.

To the extent that Cato has paid the debt of Cook to Colby, is Cato entitled to be reimbursed by Colby, before permitting him to enforce his lien on the identical property for which Cato had once paid Colby's executrix. She gets what Cato was to pay Cook for the property, and applies it to the mortgage debt, and because a balance is still due, she asks to be allowed to take the property itself and sell it, and keep all the proceeds, and also to hold on to what Cato paid. In other words, she asks the court to add to, to increase her security for Cook's debt to her estate. She has a mortgage on the real estate, and she also had Cato's note for the same property mortgaged, and having realized the amount of the note, she proceeds now to appropriate the entire consideration of that note. To permit this would be an admirable illustration of the maxim that you must do equity before asking it. It would be making a strange use of the doctrine of estoppel.

The court of chancery has possession of the case; it is made known to the chancellor that by *mistake* Cato has paid the executrix so much money, which, *ex æquo et bono*, he is entitled to have refunded, and as the executrix asks to enforce her lien on the consideration of the payment to her by Cato, the court will tell her she can do so when she does equity to Cato.

PETERS, J.—In 1859, Edward B. Young accepted or indorsed a draft for John C. Cook for the sum of $2,587.50, which fell due on the 1st of February, 1860. Cook was

Colby v. Cato's Adm'r.

also indebted to John Colby at the same time by two promissory notes; the one for $5,000 and the other for $2,207.25. These notes bore date about the 10th day of March, 1858, but it does not appear when they became due. For the purpose of securing these debts, Cook conveyed to Young certain lots of land lying in the city of Eufaula in Barbour county in this State, which are particularly described in the conveyance. This conveyance bears date May 21, 1859. It was made in the city of Washington, in the District of Columbia, and it was there properly acknowledged before the commissioner of deeds for this State on the day of its date. And on the 21st day of July, 1859, it was " received and recorded " in the proper office in the said county of Barbour in this State, as required by law. By this conveyance Young was empowered to sell the property therein named to pay the debts intended to be secured, if Cook made default in their payment.

Afterwards, on January 28th, 1860, Cook sold to Lewis L. Cato, for the sum of $3,000, a portion of the lots of land conveyed to Young as aforesaid. This sale was made in the city of Washington, in the District of Columbia, and the deed for said lots, thus sold, was there made and acknowledged before the commissioner of deeds for this State, and brought to this State and properly recorded in said county of Barbour, on February 6th, 1860. The debt on which Young was bound was fully paid, and some payments were made upon the debts to Colby. And among the payments made on the Colby debts were several which were made upon a promissory note for $3,000 made by Cato and payable to Cook, and by the latter transferred to Mrs. Colby, as the executrix of her husband's will. All this note seems to have been paid to her, except the sum of $685.00, the amount of a judgment in a garnishment suit in favor of one Burrus, which was paid to Burrus. After this, Mrs. Colby, by her attorneys-at-law, caused Young to advertise the lands named in the conveyance to him as above said, for sale under said conveyance in the city of Eufaula aforesaid, on the 4th day of May, 1867, for the payment of the Colby debts, or so much thereof as re-

mained unpaid. In this advertisement of sale the lots sold by Cook to Cato were included, along with the other lands conveyed to Young to secure the payment of the debts to Mrs. Colby and to Young. Cato filed the present bill to enjoin this sale, and for general relief. And in addition to the facts already above shown, the bill and amended bill state the facts of Cook's insolvency, and his non-residence, and that the note given by Cato to Cook for $3,000 was for the purchase-money of the lots sold to Cato, and that Mrs. Colby must have known this fact, and if she did not, then Young, her trustee, did at the time the note was transferred to her. And also that the complainant knew nothing of the mortgage until the sale was advertised in 1868 ; and if said lots are sold to pay the mortgage debt, " said lots will be made to pay it twice." Mrs. Colby and Young and Cook are made defendants to the bill and amended bill. The two former answer, and judgment *pro confesso* is taken as to Cook. Mrs. Colby admits the several conveyances above stated, and sets up the mortgage in her defense. She also shows that her debts are not paid, but that there remains a balance thereon of $8,918.15, after giving credit for all she received on the note for $3,000 aforesaid, and demurs. Young also answers and admits the full payment of the debt on which he was liable, and that a sale of all the property conveyed to him had been advertised, as stated by the complainant. The mortgage is made an exhibit to Mrs. Colby's answer, and is referred to as such by Young. The preponderance of the proof is in favor of Mrs. Colby's answer. No notice seems to have been taken of the demurrer, and the cause was heard upon the bill as amended, the answers, exhibits and proofs. The learned chancellor directed an account to be taken to ascertain what sum of money had been collected by Mrs. Colby on the note of Cato to Cook, which had been transferred to her. This was ascertained to be $779.30, and so reported, and the report confirmed. And the court further decreed " that upon the payment by defendants to complainant of the said sum of $779.30, with interest from this date, and the costs of this suit and the filing of receipts therefor with

the register of this court, which receipts shall be made a part of the record in this cause," that then the injunction heretofore granted " shall be deemed and held of no effect and dissolved." And in default of the payment of said sum of money and costs within six months after the date of the decree, then said injunction is " declared to be perpetual." The defendants were also taxed with the costs. From this decree the defendants appeal to this court, and here assign the decree for error.

The conveyance from Cook to Young to secure the payment of his acceptance for Cook, and Cook's promissory notes to Colby, was in effect but a mortgage.—*Mussena v Bartlett*, 8 Port. 277 ; 7 Bac. Abr. Bouv. p. 27, *et seq* ; 4 Kent, p. 134 (marg.) ; *Cunard v. The Atlantic Insurance Company*, 1 Pet. 386 ; 1 Hilliard Real Prop. 371, chap. XXIX. This instrument holds all the lands and other property mentioned therein subject to the trusts created by its stipulations. And among these are the payment of all the debts intended to be secured, and the interest theron, and all damages that Young might sustain on account of his acceptance or indorsement of Cook's draft. The recital in the mortgage, on this point, is in these words : " This grant is intended as a security for the payment of the draft and notes herein described. If not paid, then the said Edward B. Young has power to sell for cash or on time as he may think best, upon giving ten days notice by a notice put up at the post-office in the city of Eufaula, and the proceeds to be applied to the payment of said draft and notes, and to reimburse him fully for all damages he may sustain on account of said indorsement." This language is too plain for misconception. It very clearly subjects all the lands named in the conveyance to sale for the purpose of the payment of all the debts intended to be secured—the entire debt to Colby, as well as the full amount of Young's liability on his acceptance. After this conveyance, Cook had no estate, that he could pass to Cato, except his right of redemption, and possibly his possession until the law day had arrived.—1 Ala. 23, 708 ; 2 Ala. 553 ; 19 Ala. 753 ; 21 Ala, 288 ; Rev, Code, § 2871, cl. 3. The estate thus

acquired could not be allowed to impede Mrs. Colby's right, as the representative of her husband, to insist on a foreclosure.—2 Ala. 331. It does not appear from the allegations of the bill or amended bill that she had relinquished this right, or forfeited it, or that her debt had been paid, or that the mortgagee or beneficiary had been barred by the statute of limitations. The proof shows that neither Mrs. Colby nor Young knew of the consideration of Cato's note. The bill admits that Mrs. Colby's debt had not been paid.

The conveyance to Young was dated on the 21st day of May, 1859, and it was recorded after being properly acknowledged before a commissioner of this State in Washington city, in the District of Columbia, in the proper office of the county, in which the lands therein conveyed were situated, on the 21st day of July, 1859. This was within three months from the date of the conveyance.. This was sufficient notice, to all subsequent purchasers, of its contents.—Rev. Code, §§ 1546, 1557, 1592; *Gimon v. Davis*, 36 Ala. 589. Cook's deed to Cato bears date the 28th day of January, 1860. He was then a purchaser subsequent to the conveyance, and its record was notice of its contents to him.—36 Ala. 589, *supra.* He is, then, not a *bona fide* purchaser without notice, and as such, he is not entitled to protection against the conveyance to Young, nor is he in a condition to displace Mrs. Colby's right to have the power in the conveyance executed by a sale of the whole of the land therein conveyed, for her benefit, as the executrix of her husband's will.—11 Ala. 438, *supra.*

Cato's note to Cook for the purchase-money of the lands sold to him and conveyed by the deed of the 28th day of January, 1860, was Cook's own property. He could pay his debts with it or transfer it to whom he might please— to Mrs. Colby or any one else, without Cato's consent or approbation.—*Andrews & Bros. v. Jones et al.*, 10 Ala. 400; Coke Litt. 223. If Cato chose to pay his note after it went into Mrs. Colby's possession, its payment only lessened the mortgage debt, so far it was received as a payment on that debt. Mrs. Colby was not bound to know that it had

been given for the purchase-money of the lots mentioned
in Cato's deed from Cook ; because the deed recites that
the purchase-money was paid in " dollars." But so far as
she collected any sums of money on this note, as it does
not otherwise appear, it must be held to have diminished
the mortgage debt to the amount of the balance left, after
the deduction of the judgment in favor of Burrus ren-
dered in the garnishment suit. It does not appear that she
has refused to allow this credit. But the mere transfer of
this note to Mrs. Colby did not release the grasp of the
conveyance to Young on any part of the property therein
conveyed for the payment of all the debts intended to be
secured thereby. The mere fact that the note was given
for the purchase-money of the lots sold to Cato by Cook,
a transaction in which Mrs. Colby took no part, is not suf-
ficient to give it the force of a relinquishment by her of the
mortgage conveyance on the lots thus sold. Her mort-
gage rights could not be released without her consent or
agreement.—8 Coke, 92. And this is not alleged or proven.
A payment of the amount of the note in money by Cook
on the notes payable to Colby and secured in the convey-
ance to Young would not have released the lots sold to
Cato, unless it was so accepted by Mrs. Colby ; much less
would the transfer of the note have this effect. It is not
alleged in the bill, nor is there any proof to support such
an allegation, had the fact been so stated, that Mrs. Colby
accepted the transfer of Cato's note to Cook in considera-
tion of the release of the mortgage conveyance on the lots
purchased by Cato. The bill can not, in its present form,
be sustained without such an allegation or its equivalent,
or an allegation that Cato was an innocent purchaser for
value, without notice of an unrecorded prior incumbrance.
*Allen v. Montg. R. R. Co.*, 11 Ala. 437.

The allegations in the bill that Cook had become utterly
insolvent, and if the sale of the lots purchased by Cato
from him was permitted to take place, Cato would have to
pay for the lands twice, do not show equity as against Mrs.
Colby. It is not her fault, or the fault of her testator, th a
he was induced to make the purchase, and it was not her

fault that he bought an incumbered estate. It was his own fault. Had he examined the records of the proper office, he would have been advised of the character of his title, and could have taken the proper steps in time to have saved himself from harm. The law helps the vigilant; not those who sleep upon their rights until it is too late to awake. To enjoin the sale for such reasons would make Mrs. Colby responsible for Cato's unfortunate bargain. This would not be equity. *Ubi culpa est, ibi poena subesse debet.*—Jenk. Cent. 325.

The debt on which Young was bound, which is one of those secured in the mortgage, having been paid, Mrs. Colby, as the representative of her husband's estate, is the only party interested in the foreclosure. As such, she could require the sale to be made of all the lands mentioned in the conveyance, if this should be needed for the payment of her debts, or file her bill to have the mortgage foreclosed.—Rev. Code, § 1589; Shep. Dig. 304, § 59.

The case, then, as presented by the bill, neither in the allegations nor the proofs, is sufficient to sustain the decree of the learned chancellor in the court below. The bill should have been dismissed.

The decree of the court below is, therefore, reversed. And it is the order and decree of this court that the injunction granted in this case be dissolved, and that the bill be dismissed, at the costs of the appellee in this court and the court below.—Rev. Code, § 3502.