IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION

KNOXVILLE, SEPTEMBER TERM, 1916.

W. B. MERRIMON *et al. v.* W. C. PARKEY *et al.*

(*Knoxville.* September Term, 1916.)

1. MORTGAGES. Liabilities secured. Renewal notes.

A mortgagor and mortgagee may agree that renewal notes representing balances of notes secured by a trust deed shall not effect any novation, but constitute parts of the obligations secured by the trust deed. (*Post, pp.* 650—652.)

2. INTEREST. Notes. Annual interest.

A stiplation in a note for the payment of interest annually is valid and binding on the maker or indorser or one who has assumed the payment of the note. (*Post, p.* 652.)

Cases cited and approved: House v. Tenn. College, 54 Tenn., 129; Lane v. Railroad Co., 81 Tenn., 547.

3. INTEREST. Notes. Stipulation for annual interest. Effect after maturity.

A stipulation in a note for the payment of interest annually has operative effect only to the date of maturity of the note, after which time interest must be computed without annual risks. (*Post, pp.* 652, 653.)

136 Tenn.] (645)

Merrimon v. Parkey.

4. **INTEREST. Annual interest. Computation after maturity of note.**

In the absence of all contract, express or implied, for interest beyond maturity of the principal debt, annual interest thereafter is not recoverable, though there may be a provision therefor in the contract before the principal falls due. (*Post, p.* 653.)

5. **BILLS AND NOTES. Attorney's fee. Enforcement.**

An attorney's fee provided for in a note is a constituent part of the obligation, enforceable by or in behalf of the holder, and is not a distinct obligation or penalty to be enforced in behalf of the attorney or as a separate cause of action. (*Post, p.* 654.)

6. **BILLS AND NOTES. Attorney's fee. Liability of one assuming note.**

The liability of one assuming to pay a note includes liability for an attorney's fee stipulated in the note. (*Post, p.* 654.)

Cases cited and approved: Franklin v. The Duncan, 133 Tenn., 472; Daly v. Drug Co., 127 Tenn., 425.

7. **MORTGAGES. Purchase of mortgaged premises. Attorney's fee. Assuming debt.**

A purchaser of mortgaged premises, assuming the mortgage in general terms, becomes liable for all that may be actually due upon it, which may include attorney's fee. (*Post, p.* 654.)

Cases cited and approved: Johnson v. Harder, 45 Iowa, 677; Hatcher v. Kinkaid (Okl.), 150 Pac., 182.

8. **MORTGAGES. Sale of premises. Assuming mortgage. Right of purchaser.**

A vendee assuming an existing trust deed or mortgage on the land takes the incumbrance as it stands, subject to all the conditions touching the mortgage debt, and he cannot show that the debt is different, or payable in a manner different from its terms. (*Post, p.* 654.)

9. **MORTGAGES. Debt secured. Attorney's fee.**

Where a note contains a stipulation for the payment of an attorney's fee and is secured by a mortgage containing no such

Merrimon v. Parkey.

stipulation, such fee, on being incurred, becomes a part of tthe debt for which the mortgage may be foreclosed; for the securing of the note secures the attorney's fee provided for therein, it being a constituent part of the obligation. (*Post, pp.* 654, 655.)

Cases cited and approved: Bailey v. Butler, 138 Ala., 153; County Bank v. Goldtree, 129 Cal., 160; Worth v. Worth, 155 Cal., 599; Millsaps v. Chapman, 76 Miss., 942; Carhart v. Allen, 56 Fla., 763.

10. **MORTGAGES.** Sale of premises. Assuming debt. Attorney's fee.

Where notes contained stipulation for attorney's fee, but were secured by trust deed containing no such stipulation, such attorney's fees were enforceable on foreclosure of the trust deed, as part of the obligation secured thereby, against subvendees who had assumed payment of part of the notes and whose deed was subject to the deed of trust, such subvendees standing in the shoes of the mortgagor and not being innocent purchasers as respects the attorney's fee stipulation. (*Post, pp.* 655, 656.)

Cases cited and approved: Ricketson v. Richardson, 19 Cal., 330; Fetes v. Laughlin, 62 Iowa, 532; Hinricks v. Brady, 20 S. D. 599.

11. **MORTGAGES.** Assuming mortgage. Restricting personal Liability.

Subvendees purchasing an undivided interest in mortgaged premises may assume, so far as personal liability on their part is concerned, the payment of a specified portion only of the mortgage debt. (*Post, pp.* 656, 657.)

12. **MORTGAGES.** Sale of premises. Assuming mortgage. Release by payment.

The purchaser of an undivided interest in mortgaged premises and assuming a portion of the mortgage debt is not entitled, on paying the part of the mortgage debt assumed by him, to have the whole mortgage released as to his interest. (*Post, p.* 657.)

Case cited and distinguished: Colby v. Cato, 47 Ala., 247.

13. **BILLS AND NOTES.** Assuming liability. Attorney's fee.

The liability, on stipulation to pay attorney's fee, of one assuming to pay a note, is not affected by his lack of actual notice or knowledge that the note contained such a stipulation; knowledge of the terms of the note being presumed from its assumption. (*Post, pp.* 657, 658.)

14. **BILLS AND NOTES.** Liability. Joint makers.

Persons signing notes as joint makers and primarily liable thereon to the payee cannot impose their attitude of sureties *inter sese* upon the payee or holder so as to affect his rights. (*Post, p.* 658.)

Case cited and approved: Graham v. Shephard, 136 Tenn., ——.

15. **MORTGAGES.** Assuming mortgage. Primary and secondary liability.

Where the grantee of mortgaged premises assumes payment of mortgage debt, he becomes the principal debtor and primarily liable therefor to the mortgagee; the mortgagor then taking the *status* of surety, so far as the promisor is concerned. (*Post, pp.* 658, 659.)

Cases cited and approved: Sully v. Childress, 106 Tenn., 109; Fanning v. Murphy, 126 Wis., 538.

16. **MORTGAGES.** Assuming mortgage. Primary and secondary liability.

Where a mortgagor conveys the property to one who assumes the mortgage, who in turn conveys to another, who also assumes it, the latter becomes the principal debtor and primarily liable to the mortgagee. (*Post, p.* 659.)

Case cited and approved: Hendricks v. Brooks, 80 Kan., 1.

17. **MORTGAGES.** Foreclosure. Sale of Property.

Upon foreclosure of trust deed, where purchasers of an undivided interest from the mortgagor, having assumed and paid a part of the mortgage debt, requested a separate sale of such interest, and the note holder objected that such sale would probably produce less than sale *in solido*, it was proper to advertise and cry the sale on both bases and adopt the one which produced the larger result. (*Post, pp.,* 659, 660.)

FROM BLOUNT.

Appeal from the Chancery Court of Blount County. —HAL H. HAYNES, Chancellor.

H. H. SHELTON and ROBERT L. PENNINGTON, for complainants.

L. D. SMITH, JOHN P. DAVIS, MONTGOMERY & MONTGOMERY and JOHN C. CRAWFORD, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

On February 13, 1906, W. C. Parkey and Jesse L. Rogers, being the owners of a tract of land of four thousand five hundred sixty-four and one-half acres, conveyed a three-fourths undivided interest therein to H. E. Fugate, A. J. Moles, and W. S. Moles for a consideration of $42,792.19, a part of which was paid in cash. In order that each of the vendors might receive and handle his own portion of the purchase-money notes, these were executed in two series, of three notes of $6,132.03 each, maturing in one, two, and three years, respectively, from date.

Each note contained a recital that interest thereon "is payable annually," and another that:

"If suit is instituted upon this note or it is placed in the hands of an attorney for collection, we agree

to pay ten per cent. attorney's fee, same to be taxed up in judgment.''

The purchasers of the land, in order to secure the payment of these notes, executed a deed of trust in which there was conveyed to a trustee the same ''undivided three-fourths interest'' in the tract of land.

On June 5, 1906, A. J. Moles and W. S. Moles, two of the mortgagors, executed to W. B. Merrimon and Peter Parkey a deed reciting that they conveyed ''to the parties of the second part jointly an undivided interest'' in the tract of land. The parties to this deed understood that it conveyed a one-half undivided interest in the realty. The consideration was $50 cash and ''the assumption of the payment of the six notes of $6,132.03 each'' described above.

On March 8, 1907, Peter Parkey conveyed to C. E. Couk and R. L. Pennington jointly the one-fourth undivided interest to Peter Parkey in the tract, for a consideration of $500 and the ''assumption of the payment of one-third of'' certain notes of the series originally executed to W. C. Parkey and Jesse L. Rogers, ''making a total consideration of $6,176.04 payable to W. C. Parkey and Jesse L. Rogers.'' The deed is expressly made subject to the deed of trust securing the series of notes above described.

Couk and Pennington, it appears, have since paid the principal and interest accrued on the notes so far as assumed by them.

Later on, Rogers took from Fugate two notes to represent balances of the last maturing notes that

were originally executed to Rogers as payee, under a written agreement to the effect that they were to be deemed renewal notes and to constitute parts of the obligations secured by the deed of trust, and not to effect any novation. The chancellor held correctly that there was no novation of the debt in the taking of such notes by Rogers.

The assumptions were evidenced in two ways: (a) By recitals to that effect incorporated in the deeds executed and delivered to the assumers; and (b) by indorsements of the contracts of assumption on the back of the notes so assumed, except in the case of Couk and Pennington.

The Merrimon interest in the tract was incumbered by subsequent deeds of trust and legal proceedings.

Various payments were made by the several original obligors on the series of notes, and some were made by those who later became obligors by way of assumption of payment. The balances being long past due, the trustee under a power of sale incorporated in the deed of trust on request of the noteholders advertised a foreclosure sale. This sale was enjoined by the original bill of the subvendees, in which it was claimed that they should be treated as sureties, and that they were released from liability by such extension granted; the note obligations were attacked for partial failure of consideration on account of the asserted deficiency in the acreage (a claim abandoned in the chancery court); and the bill also set out that there was a false claim of right on the part of defend-

ants to compound interest on the notes. The holders of the notes answered, and filed a cross-bill in which foreclosure of the trust deed was prayed.

Many subordinate, kindred, and collateral questions have been raised; in fact, a statement of all the facts of and contentions in the case would call for much repetition, be voluminous, and tend more to confuse than to clarify. The principles that solve the above issues avail also to illustrate and solve all of the main issues that involve questions of law, and we refrain from a more detailed recital of the facts.

Two appeals were prayed from the decree rendered by the chancellor—one by the noteholders who filed the cross-bill, the other by the subvendees of the original purchasers of the tract of land.

I. Treating first of the assignments of error of the holders of the notes, cross-complainants:

The stipulation for the payment of interest on the notes annually is valid, and binding on the maker, or an indorser or one who has assumed the payment of the notes. *House* v. *Tenn. College,* 7 Heisk. (64 Tenn.), 129; *Lane* v. *Railroad Co.,* 13 Lea (81 Tenn.), 547.

But it has operative effect only to the date of the maturity of the note, after which time interest must be computed without annual rests.

The rule is thus stated in 22 Cyc. 1516:

"After the maturity of the principal debt upon which interest is payable in periodical installments, no installments of interest will be considered as coming due, in the absence of a specific contract to that

Merrimon v. Parkey.

effect, for both the principal and interest are due on every day thereafter until paid, and interest will not be allowed on interest that accrues merely by lapse of time after the maturity of the principal debt. But where there is an agreement for the payment of interest periodically after the maturity of the principal debt as well as before, interest will be allowed on installments of interest falling due after maturity of the principal and unpaid.''

We think the true rule is more accurately stated, in regard to the necessity of such contract being specific, in 16 Am. & Eng. Enc. L. (2d Ed.), 1071:

''In the absence of all contract, expressed or implied, for interest beyond the maturity of the principal debt, annual interest thereafter is not recoverable, though there may be a provision therefor in the contract, before the principal falls due.''

The chancellor's decree in so limiting the allowance of compound interest was correct.

As already noted, the mortgage notes, and the renewal notes, contained the usual provision for a ten per cent. attorney fee; and the holders insist that since they were put to the necessity of establishing liability on the part of those who assumed to pay the mortgage debt, and of foreclosing the lien of the mortgage or trust deed, the fee should not only be allowed in their behalf as a liability of the assumers *in personam,* but also should have been decreed to have the security of the lien of the mortgage, treating the fee as a part of the notes.

In this State a fee so provided for in a note is a constituent part of the obligation, enforceable by or in behalf of the holder, and it is not considered to be a distinct obligation or penalty to be enforced in behalf of the attorney or as a separate cause of action.

The liability of one who assumes to pay such a note includes liability for the attorney fee. 8 Corpus Jur., 1098; *Franklin* v. *The Duncan*, 133 Tenn., 472, 182 S. W., 230; *Daly* v. *Drug Co.*, 127 Tenn., 425, 155 S. W., 167, Ann. Cas., 1914B, 1101—the last being a case of involuntary assumption or of imposition by law.

If the purchaser of mortgaged premises assumes the mortgage in general terms, "he becomes liable for all that may be actually due upon it, which may include * * * attorney's fees." 27 Cyc., 1356, citing *Johnson* v. *Harder*, 45 Iowa, 677; and see *Hatcher* v. *Kinkaid* (Okl.), 150 Pac., 182.

A vendee assuming an existing trust deed or mortgage on the land takes the incumbrance as it stands, subject to all the conditions touching the mortgage debt. 27 Cyc., 1347. He cannot show that the debt is different, or payable in a manner different, from its terms. 2 Jones on Mortgages (7th Ed.), sec. 744.

Where a note contains a stipulation for the payment of an attorney's fee, and is secured by a mortgage containing no such stipulation, such fee, on being incurred, becomes a part of the debt, for which the mortgage may be foreclosed. *Bailey* v. *Butler,*

138 Ala., 153, 35 South., 111. The securing of the "note" secures attorney's fee provided for therein, which is a constituent part of the obligation. *County Bank* v. *Goldtree,* 129 Cal., 160, 61 Pac., 785, followed by *Worth* v. *Worth,* 155 Cal., 599, 102 Pac., 663; *Millsaps* v. *Chapman,* 76 Miss., 942, 26 South., 369, 71 Am. St. Rep., 547; *Carhart* v. *Allen,* 56 Fla., 763, 48 South., 47.

The chancellor, it seems, held this view; but he was of opinion that the lien of the mortgage or trust deed could not be enforced in respect of the attorney's fee because of the existence of subsequent conveyances of the land to grantees who had no notice from the recitals of the recorded mortgage that an attorney's fee was by it secured. In short, his view was that the lien existed for the security of the fee as between the mortgagor and the mortgagee, but that it was not enforceable by the latter against subsequent incumbrancers or purchasers.

What may be the sounder view in regard to the lien *status* of such fees as against true subsequent purchasers or incumbrancers (and by our waiving, as unnecessary in this case, a discussion of the point we do not wish to be understood as intimating an opinion that the chancellor's view is the correct one—see on the point *Ricketson* v. *Richardson,* 19 Cal. 330; *Fetes* v. *O'Laughlin,* 62 Iowa, 532, 17 N. W., 764; *Hinricks* v. *Brady,* 20 S. D., 599, 108 N. W., 332), we think the chancellor committed error in wholly disallowing the fee such a *status* under the facts of this case.

No sort of subsequent transfer of or incumbrance on the interest of Fugate in the realty appears in the record. As joint maker of the notes he is liable on them, not for a segregated portion, but for their totality—the amount due plus the entire allowable attorney's fee. And it has already been noted that as to Fugate's interest in the realty such fee is secured by the mortgage.

Further, Couk and Pennington, as subvendees holding an interest under the Moles brothers, are personally bound for one-third of the fee in accord with the contract of assumption; and they are not to be deemed subsequent purchasers proper, or in such a sense as to entitle them to assert priority as against that which they assumed to pay. They cannot hold the interest in the land and escape, or cause it to escape, the payment of the consideration they agreed to pay therefor. By assumption they take, and must be content with, the shoes of the mortgagor in respect to liability in both aspects, personal and lien. Any other conception would lead to anomalies so manifest as not to call for particularization.

It was, of course, competent for Couk and Pennington in so purchasing an undivided interest in the mortgaged premises to assume the payment only of a specified portion of the mortgage debt, in all its parts, so far as personal liability on their part was concerned. 27 Cyc., 1355.

But, when they made payment, it is not true that such interest was thereby freed from the grasp of the

lien precedently fixed on it by the mortgagor, so far as the mortgagees are concerned.

The purchaser of a portion of or an undivided interest in the premises covered by a mortgage is not entitled, on discharging his obligation to pay a part of the mortgage debt, to have the mortgage treated as released as to his interest.

"The mortgage covers the whole property, and secures the whole debt, and the holder of it, aside from any agreement, is under no obligation to release any part of the property on payment of a part of. the debt." 2 Jones, Mortgages (7th Ed.), sec. 767; *Colby* v. *Cato*, 47 Ala., 247.

It is claimed by Couk and Pennington that they had no notice or knowledge that there was a clause providing for such a fee in the notes, and neither they nor their interest should be bound for its payment. One who assumes to pay a note or a debt known to be secured by a note may not be heard to say that he was ignorant of its terms.

II. Coming now to the appeal and assignments of error of the subvendees:

Appellants contend that they were released from further liability on their contracts of assumption of the payment of the original notes to Rogers, because the latter granted to Fugate an extention of time by way of the acceptance from Fugate of his note in renewal of a part of the indebtedness; and that this is true even though such renewal did not amount to

a novation. This insistence is predicated on the theory that appellants must be treated as sureties and only secondarily liable on the notes. It is urged that each of the three signers of the original notes was primarily liable for only one-third thereof, and is to be deemed secondarily liable for what is insisted to be the one-third of those notes primarily due from each of the other two makers.

This is an erroneous theory. H. E. Fugate, A. J. Moles, and W. S. Moles were joint makers and primarily liable on the notes, and are not to be treated as sureties, the one for the other, so far as the payee or holder is concerned. The Negotiable Instruments Act provides that the person "primarily" liable to the holder on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. See, also, sections 119 and 120, and *Graham v. Shephard,* 136 Tenn.,—, 189 S. W., 867. And their attitude of sureties cannot be imposed upon the holder, or further than as relates to their rights *inter sese.* 32 Cyc., 34.

So if appellants stand in the shoes of A. J. Moles or W. S. Moles, or both of them, they are not to be deemed sureties for Fugate, in the sense here contended for.

Nor by their contracts of assumption did appellants become such sureties or secondarily liable for the supposed Fugate portion of the notes.

Where the grantee of mortgaged premises assumes the payment of the mortgage debt, he becomes the

principal debtor and primarily liable therefor to the mortgagee; the mortgagor then taking the *status* of surety, so far as the promisor is concerned. *Sully v. Childress,* 106 Tenn., 109, 60 S. W., 499, 82 Am. St. Rep., 875; *Fanning v. Murphy,* 126 Wis., 538, 105 N. W., 1056, 4 L. R. A. (N. S.), 666, 110 Am. St. Rep. 946, 5 Ann. Cas., 435, and cases cited in note.

Where a mortgagor conveys the property to one who assumes the mortgage, and who in turn conveys to another, who also assumed the mortgage, the latter occupies the same position with reference to the mortgage, and becomes the principal debtor. 2 Jones, Mortgages, paragraph 747a; *Hendricks v. Brooks,* 80 Kan., 1, 101 Pac., 622, 133 Am. St. Rep., 186.

Since appellant's liability is primary and not secondary, they are in no attitude to complain of such renewal.

Couk and Pennington claim error because the chancellor denied their prayer for a sale of the realty in one-fourths so that they (having paid in full the amount of principal of and interest on the notes they assumed to pay) may the more adequately protect themselves at the sale, and not be put to the task and hazard of protecting themselves by buying at a foreclosure sale in which three-fourths undivided interest would be sold and must be bid for as an entirety. The noteholders reply to this that the sale of separate one-fourth undivided interests may operate to their prejudice, since less probably would be produced than if the interests were put to sale *in solido.* We think the

proper decree is: That the sale be advertised and cried on both bases; that one to be adopted which produced the larger result.

Other assignments of error are disposed of and overruled in a memorandum for decree. They involve no questions that are not well settled in this state, and we see no need of incumbering a published opinion with their disposition.

The chancellor's decree was without error except in the respect just noted, and in its denial of lien *status* to the attorney fee, for the reasons and to the extent above shown. Modify accordingly, affirm, and remand for further proceedings not inconsistent with this opinion. The costs of the appeal will be paid as follows: Three-fourths by the complainant-appellants, and one-fourth by the defendant-appellants.