JULIAN *v.* AMERICAN NAT. BANK.

*(Nashville,* December Term, 1937.)

Opinion filed March 5, 1938.

W. L. BRYAN, of Atlanta, Ga., FRANK M. YOUNG, of Birmingham, Ala., and MANIER & CROUCH, of Nashville, for appellant.

BASS, BERRY & SIMS, of Nashville, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The single issue involved upon this appeal is the right of defendant bank to apply the proceeds of certain collateral, held by it as security to certain notes, in payment of attorneys' fees incurred by it in the sum of $8,811 in defending its right to the possession of said collateral.

The master, upon an order of reference, sustained such right, and, upon exceptions filed by complainant, the report of the master was confirmed by the chancellor. On the hearing before the master, counsel for complainant stated that they made no question as to the amount of such fees. The cause was heard upon a stipulation of facts.

On May 27, 1930, Julian was appointed receiver for the Citizens Life Insurance Company, an Alabama corporation, by the United States District Court for the Northeastern Division of the Northern District of Alabama. At that time the Citizens Life Insurance Company was indebted to the defendant bank, evidenced by two notes, one for $116,099.72 and the other for $30,000. Mortgage notes and bonds of the value of $101,009.

54 were attached to said two notes as collateral security for their payment. Shortly after the appointment of said receiver, the defendant bank placed said two notes in the hands of its attorneys, Bass, Berry & Sims, for collection.

On August 22, 1931, the receiver filed the original bill herein by which he sought to recover said collateral upon allegations that it was the property of the Citizens Life Insurance Company, and that it was turned over to the defendant bank wrongfully and without authority.

Since the Citizens Life Insurance Company is insolvent, the bank would sustain a very large loss if deprived of this collateral; hence it was important and necessary that the bank employ counsel to defend the suit, which they succeeded in doing to the extent of $105,000 of its indebtedness. The opinion as to that matter is reported in, 21 Tenn. App., —, 106 S. W. (2d), 871. The cause was remanded to the chancery court for the purpose of having the reference ordered by the chancellor executed.

In the stipulation, with regard to the reference, the following provision appears:

"It is further stipulated and agreed that in contesting this lawsuit and other lawsuits instituted by Louis Irons as Ancillary Receiver of Citizens Life Insurance Company in Georgia, that the American National Bank has expended the sum of Six Thousand Eight Hundred Eleven and 01/100 ($6,811.01) Dollars. The bank claims this amount as attorneys fees and expense and such additional amount as its present attorneys, Bass, Berry & Sims, may contend for and which may be allowed by the Court. The complainant Frank N. Julian, while admitting that the actual amount set out has been ex-

pended,. denies that the same is a legal charge against the collateral or against Frank N. Julian, Receiver, or that any amount is a proper charge in this lawsuit; and in the event the Court should hold that any part of same is a proper charge, reserves the right to contest the reasonableness of attorneys fees and expenses—that is to say, the expenses and attorneys fees may be claimed before the Master in this cause on this reference and this stipulation shall in no wise prejudice any defense which may be introduced to any claim so made nor shall the same in any wise prejudice the claim as made.''

From the foregoing, it appears that the parties consented to a disposition of the question as to the right of defendant bank to apply the collateral in its hands to the payment of the attorney's fees, and on the hearing the amount of such fees were, in effect, admitted.

The defendant filed no cross-bill and sought no affirmative relief against complainant, since it considered that such a decree would be worthless, and for the further reason that it considered the collateral held by it sufficient to pay the debts for which it was hypothecated.

The larger of said notes contained the following language with reference to attorneys' fees, to wit, ''and the maker or makers further agree, if this note is not paid at maturity and is put in the hands of an attorney for collection, to pay a reasonable attorney's fee.'' The smaller note contained the following provision with reference to attorneys' fees, to wit, ''the makers and endorsers of this note hereby expressly waive all right to claim exemption allowed by the Constitution and laws of this or any other State, and agree to pay all cost of collecting this note, including a reasonable attorney's fee

for all services rendered in any way, in any and all suits against any maker or endorser, or in collecting or attempting to collect, or in securing or attempting to secure this debt, if this note is not paid at maturity.''

Such provisions in notes are enforceable in this jurisdiction. *Holston Nat. Bank* v. *Wood,* 125 Tenn., 6, 140 S. W., 31; *Franklin* v. *The Duncan,* 133 Tenn., 472, 182 S. W., 230, Ann. Cas., 1917C, 1080; *Merrimon* v. *Parkey,* 136 Tenn., 645, 191 S. W., 327; *Moore* v. *Cary,* 138 Tenn., 332, 197 S. W., 1093, L. R. A., 1918D, 963; *Carolina Spruce Co.* v. *Black Mountain R. Co.,* 139 Tenn., 248, 201 S. W., 770; *Nickey Bros.* v. *Lonsdale Mfg. Co.,* 149 Tenn., 391, 258 S. W., 776. Such fees may be collected where the notes are placed in the hands of an attorney for collection although no suit is brought. *Mallory* v. *Columbia Mortgage & Trust Co.,* 150 Tenn., 219, 263 S. W., 68.

In *Carolina Spruce Co.* v. *Black Mountain R. Co.,* 139 Tenn., 248, 249, 250, 201 S. W., 770, 771, it is said: ''Reasonable fees for a mortgagee's or trustee's attorney may be retained out of the proceeds of a foreclosure sale when provided for in the mortgage; such a provision being valid.

''The provision in the notes is construed to be for the indemnity of the pledgee against loss and to enable it to recover the whole debt without his being onerated with the payment of the fees of counsel, 27 Cyc., 1501, 1782. The fair and reasonable implication is that, if the pledgee should be put to the necessity of overcoming legal obstructions, interposed by the pledgor, in order to bring the collateral bonds to sale, costs and attorney's fees are to be deducted as against the pledgor from the proceeds of the sale when made.''

In 7 American Jurisprudence, 865, it is said: ''The rule obtaining in a majority of jurisdictions is that a stipulation in a bill or note for the payment of costs of collection or attorneys' fees is valid. Such a stipulation is regarded in those jurisdictions as a reasonable provision for reimbursement or indemnity to the creditor against the expenses incident to a default on the part of the debtor. This view is founded on the conceded right of parties to make their contracts in what form they please, provided they conform to the law of the land.'' As stated in *Oppenheimer* v. *Bank,* 97 Tenn., 19, 31, 36 S. W., 705, 709, 33 L. R. A., 767, 56 Am. St. Rep., 778, ''It is an indemnification assured by the maker against the consequences of his own act.''

It seems to us that the attorneys' fees incurred herein come within both the letter and the spirit of the contract entered into by the insurance company and the bank. In this class of cases it is the duty of the court to give effect to the evident intent of the parties.

The receiver takes the position that such fees can only be collected where the creditor prosecutes an affirmative action therefor, such as filing a bill in chancery, instituting a suit at law, or by filing a cross-bill where, as here, his right to collect the debt or appropriate the collateral is questioned by an original bill filed by the debtor.

As heretofore stated, the creditor does not necessarily have to bring suit in order to collect such fees, but may deduct them from the proceeds of the collateral in his hands, or, in case of the foreclosure of a mortgage on property, retain them out of the proceeds of sale. As a matter of pleading and practice, he would necessarily have to bring an affirmative action where he is seeking

a personal judgment against the debtor for attorneys' fees. For example, if A should execute a note to B providing for attorneys' fees if it should be placed in the hands of an attorney for collection, and B should unsuccessfully prosecute a suit for the cancellation of the note on the ground of fraud, A could recover no fee in that case in the absence of an affirmative pleading. In the instant cause, however, the bank is seeking no affirmative relief against complainant. It was the latter who was affirmatively undertaking to deprive the defendant of its collateral. Being unsuccessful, the parties by consent submitted to the determination of the court the right of the bank to have the attorneys' fees for which it became liable in the defense of that suit paid out of the proceeds derived from the sale of the collateral, and the chancellor very properly decreed in favor of the bank. The right to fees under the contract is one thing and the remedy by which that right may be enforced is another matter.

Counsel for complainant rely upon the following cases decided by the Supreme Court of Alabama, to wit: *Ward* v. *Bank of Abbeville,* 130 Ala., 597, 30 So., 341; *Thomas* v. *Barnes,* 219 Ala., 652, 123 So., 18; *Kelly* v. *Carmichael,* 221 Ala., 371, 129 So., 81, 83.

In the first of those cases the defendant successfully defended a suit by the debtor to have a note and mortgage canceled, and was allowed a fee for defending it. The Supreme Court reversed as to the fee, stating that defendant could have no affirmative relief in the absence of a cross-bill, but indicated that it might have relief by resorting to its original remedies.

In *Thomas* v. *Barnes* and *Kelly* v. *Carmichael* the bills were filed by the debtors for the purpose of redeem-

ing properties sold under mortgages. The suits were defended successfully by the respective creditors who made claims for fees in those suits. The court held that the contracts made no provisions for such fees, but in the latter case made this statement:

"But if the note or mortgage provides for an attorney's fee for collecting the debt as well as for foreclosing the mortgage, though there is no foreclosure, there should be allowed a reasonable fee for the services of the attorney looking to the collection of the debt rendered before the suit for redemption is filed. [Citing authorities.]

"But no fee is allowed under such circumstances for defending the suit for redemption. *Thomas* v. *Barnes, supra; Ward* v. *Bank of Abbeville,* [*supra.*]"

Upon this authority, as well as upon our own decisions, we think the defendant, by virtue of its contracts with the insurance company, is entitled to attorneys' fees, since it was necessary to place said notes in the hands of its attorneys, who collected same by establishing the right of the bank to the possession of said collateral securities; and since the provisions for attorneys' fees are integral parts of the notes, as was held in *Merrimon* v. *Parkey, supra,* the bank is authorized to apply the proceeds derived from a sale of said collateral to the payment of said attorneys' fees.

There is no error in the decree of the chancellor and it is affirmed with costs.