E. H. MOORE *v.* MRS. HATTIE CARY.

(*Knoxville.* September Term, 1917.)

1. **BILLS AND NOTES.** Maker and payee. Parties.

The same person cannot be both maker and payee, nothing else appearing. (*Post, pp.* 338-341.)

Case cited and approved: Woods v. Ridley, 30 Tenn., 194,

2. **BILLS AND NOTES.** Indorsement. Nature of liability.

Under Negotiable Instruments Law (Laws 1899, c. 94) section 17, subsec. 6, providing that where a signature is so placed upon an instrument that it is not clear in what capacity the person making it intended to sign, he is to be deemed an indorser, and in view of section 8, providing that an instrument payable to order may be drawn payable to the order of the drawer or the maker and of section 184, providing that such an instrument is not complete until it is indorsed by the payee, the payee of a note who executed an instrument with the maker in the form of a note providing that the principal and the indorsers waived demand, notice, and protest, which was taken up by a similar instrument payable to a bank, though he did not sign such instruments on the back thereof, was bound as an indorser. (*Post, pp.* 338-341.)

3. **VENDOR AND PURCHASER.** Vendor's lien. Assignment of obligation. Effect.

A vendor's equity is not extinguished by the assignment of obligation which represents it, as an indebtedness may proceed through many mutations and yet preserve its identity. (*Post, p.* 341.)

Cases cited and approved: Byrns v. Woodward, 78 Tenn., 444; Bentley v. Jordan, 71 Tenn., 353; Cowan v. Sharp, 58 Tenn., 450; Hollis v. Hollis, 63 Tenn., 524; Harris v. Vaughn, 2 Tenn., Ch., 483; Stratton v. Perry & Dumont, 2 Tenn. Ch., 633; Cate v. Cate, 87 Tenn., 41; Bowlin v. Pearson, 63 Tenn., 341; Adams v. Brown, 63 Tenn., 124.

Moore v. Cary.

4. **VENDOR AND PURCHASER.** Vendor's lien. revival.

If, notwithstanding the assignment of the obligation representing a vendor's equity, the vendor's liability for the debt persists by means of indorsement, where he subsequently reacquires the debt his lien revives and is enforceable. (*Post, p.* 341.)

Case cited and approved: Green v. Demoss, 29 Tenn., 371.

5. **HUSBAND AND WIFE.** Vendor's lien. Enforcement against surviving tenant by the entireties.

Where the vendor executed a deed to the purchaser and his wife conveying the land by the entireties, though the wife did not actually participate in the contract of purchase, and the husband made a cash payment and executed his own notes for the deferred payments, the wife who, after the husband's death, relied upon the deed for her title and accepted it as a deed for her benefit, thereby became a purchaser of the land equally with her husband, so that the vendor's equity against the land by reason of the unpaid purchase price was enforceable against her. (*Post, pp.* 341-343.)

Case cited and approved: Anderson v. Tannehill, 42 Ind., 141.

6. **VENDOR AND PURCHASER.** Vendor's lien. Attorney's Fee.

A provision in a purchase-money note that if it should be placed in the hands of an attorney for collection an attorney's fee should be paid, in addition to the principal, and should become a part of the judgment, was a part of the contract, and was to be treated as part of the purchase money agreed to be paid, where liability for the attorney's fee was properly incurred. (*Post, pp.* 343-344.)

Case cited and approved: Merrimon v. Parkey, 136 Tenn., 645.

FROM HAMBLEN.

Appeal from the Chancery Court of Hamblen County to the Court of Civil Appeals, and by *certiorari* to the

Court of Civil Appeals from the Supreme Court.—
HUGH G. KYLE, Chancellor.

McCANLESS, COLEMAN & TAYLOR, for appellant.

JAMES A. CARRIGER, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the
Court.

The bill was filed to enforce the complainant's ven-
dor's equity against certain real estate which had been
conveyed by him in a deed, not retaining a lien on its
face, to William Cary and his wife, Mrs. Hattie Cary,
as tenants by the entireties. This bill was filed after the
husband's death. Two defenses were offered: Firstly,
that the note representing the unpaid purchase money
had been so transferred as that the vendor was no
longer bound on it; hence there was a novation and the
equity lost; secondly, that in any event the vendor's
equity could not be enforced against an estate by the
entireties after the death of the husband, who alone had
executed the purchase-money note in question. The
chancellor decided in favor of the complainant, on both
points, and rendered his decree accordingly. The de-
fendant then appealed to the court of civil appeals,
where the decree of the chancellor was affirmed. The
case was then transferred to this court by the writ of
*certiorari.*

The facts disclosed by the record are these: Moore
executed a deed to Cary and wife for certain real estate
described therein, in consideration whereof Cary paid

$100 in cash, and executed his two notes, one for $325, and the other for $400. The smaller note was paid by Cary. He was unable to pay the $400. In order to secure indulgence he induced the complainant to indorse this note to the Citizens' Bank of Russellville. The bank carried the indebtedness for some time, and then insisted upon a settlement. Cary was unable to pay the amount and induced Moore to indulge him further. The plan adopted to make effectual this indulgence will now be stated.

Moore and Cary executed the following instrument: "$400.00.    Russellville, Tenn., June 3, 1910.

"Ninety days after date I promise to pay to the order of E. H. Moore four hundred dollars at the Citizens' Bank of Russellville, Tennessee, for value received, as part payment on house and lot, August 7, 1909.

"The undersigned principal and the indorsers of this note, which is filled up before signing, waive demand, notice and protest thereof, and we agree that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that we will pay ten per cent. attorney's fees in addition to the principal, which fee shall be added to and become a part of the judgment.   [Signed] W. M. CARY.

"E. H. MOORE."

This was used to take up the original $400 note.

The next note in the series used in executing the plan to give Cary indulgence was the following: "$400.00.    Russellville, Tenn., Feb. 25, 1913.

"Ninety days after date I promise to pay to the order of E. H. Moore four hundred dollars at the Citizens' Bank of Russellville, Tennessee, for value received.

"The undersigned principal and the indorsers of this note, which is filled up before signing, waive demand, notice and protest thereof, and we agree that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that we will pay ten per cent. attorney's fee in addition to the principal, which fee shall be added to and become a part of the judgment.

"[Signed]    E. H. MOORE.
"W. M. CARY."

Cary paid $150 on this paper. On June 22, 1913, this note was taken up by by another, reading as follows: "$250.00

"Russellville, Tennessee, June 25, 1913.

"Ninety days after date we promise to pay to the order of Jos. H. Dean, cashier, two hundred and fifty dollars, at the Citizens' Bank of Russellville, Tennessee, for value received.

"The undersigned principal and the indorsers of this note, which is filled up before signing, waive demand, notice and protest thereof, and we agree that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that we will pay ten per cent. attorney's fee in addition to the principal,

which fee shall be added to and become a part of the judgment.

                          ''[Signed] W. M. CARY.

                               '' E. H. MOORE.''

This paper was taken up by the following:

''$250.00

    ''Russellville, Tennessee, Sept. 23, 1913.

''Ninety days after date we promise to pay to the order of Jos. H. Dean, cashier, two hundred and fifty dollors, at the Citizens' Bank of Russellville, Tennessee, for value received.

''The undersigned principal and the indorsers of this note, which is filled up before signing, waive demand, notice and protest thereof, and we agree that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that we will pay ten per cent. attorney's fee in addition to the principal, which fee shall be added to and become a part of the judgment.

    ''Balance on house and lot bought of E. H. Moore.

                           W. M. CARY.''

Marked on the face:

''Secured by E. H. MOORE.''

This note was taken up by the following: ''$250.00.

    ''Russellville, Tennessee, Dec. 20, 1913.

''Ninety days after date I promise to pay to the order of E. H. Moore two hundred and fifty dollars, at the Citizens' Bank of Russellville, Tennessee.

''The undersigned principal and the indorsers of this note, which is filled up before signing, waive demand,

138 Tenn.—22

notice and protest thereof, and we agree that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that we will pay ten per cent. attorney's fee in addition to the principal, which fee shall be added to and become a part of the judgment.

"Renewal for land note.       W. M. CARY,

"E. H. MOORE."

Cary died before anything was done with this latter obligation, and it was paid and taken up by Moore, who then brought his suit to enforce his vendor's equity or lien.

It is admitted that the payee, E. H. Moore, in the $400 notes of June 3, 1910, and of February 25, 1913, is the same E. H. Moore whose name is signed to the paper. The argument is that inasmuch as the same person cannot be both maker and payee, the name of E. H. Moore at the foot of these instruments must be treated as a nullity; therefore, when the bank accepted these obligations, it accepted them only as the obligations of Cary, and being unindorsed, Moore was not bound on them; that when he subsequently executed other obligations he did so as a matter of grace or gratuity to Cary, and for this reason his lien or equity was lost; his connection with the debt having been severed, and a complete novation having been effected, resulting in the lodging of the obligation simply between Cary and the bank.

It is true that the same person cannot be both maker and payee, nothing else appearing. However, as pointed

out by Mr. Daniel in his valuable work on Negotiable Instruments, the execution of such instruments is very common in England and in this country, the paper being ineffective until indorsed, but on being indorsed becoming a note payable to bearer. The learned writer says:

"They are designed to enable the holder to pass them without indorsement, and are simply roundabout notes payable to bearer." 1 Daniel, Negotiable Instruments (6th Ed.), sec. 130.

The same principle is recognized in our own case of Woods v. Ridley, 11 Humph. (30 Tenn.), 194, 196. It is also recognized in the Negotiable Instruments Law, section 8, wherein it is provided that such an instrument may be drawn payable to the order of drawer or maker. But in the same law it is provided that such a paper is not complete until it is indorsed by the payee. Id. section 194. There is, however, nothing written on the back of any of the papers which Moore appears to have signed, and those must be treated as incomplete in which his name appears as payee, and apparently as maker also, unless it can be determined that Moore wrote his name on the face, intending thereby to become an indorser. "The indorsement, as its derivation and meaning would indicate," says Mr. Daniel, "is generally made by writing the transferrer's name on the back of the paper, but it may be written—although unusual and irregular—on any other portion of it, even on the face and under the maker's name. As said by Lord CAMPBELL, C. J.: 'It is quite immaterial whether

the indorsement be written on the back of the instrument or on the face.' " 1 Daniel, Neg. Instr. (6th Ed.), section 688. In the Negotiable Instruments Law it is said:

"Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser." Section 17, subsec. 6.

Now we must suppose that E. H. Moore placed his name upon the papers mentioned with the purpose of being bound. The only way in which he could be bound, under the facts stated, was as indorser, and we must therefore conclude that he intended to so bind himself. What we have said of the notes of date June 3, 1910, and February 25, 1913, will apply to the paper of date December 20, 1913, which was the one that was finally taken up and paid by Moore. We note that the signature of Moore precedes that of Cary on the instrument dated February 25th, but we do not think that would be sufficient to overcome the reasons, based on the facts stated, justifying the application of subsection 6 of section 17 of the Negotiable Instruments Law just cited. The instrument of September 23d calls for no special comment, inasmuch as it appears on the face of that paper that Moore stood as surety thereon. The same observation is true, of the note of date June 22, 1913, as between Moore and Cary, while as to the bank Moore would be joint maker.

So it is, Moore was continuously bound on the various obligations executed for the balance of the pur-

chase money down to the time he took up the last obligation, and when he took that up.

An indebtedness may proceed through many mutations yet preserve its identity. Appropriate illustrations of this statement may be found in the following cases: *Byrns* v. *Woodward,* 10 Lea (78 Tenn.), 444; *Bentley* v. *Jordan,* 3 Lea (71 Tenn.), 353, 361; *Cowan* v. *Sharp,* 11 Heisk. (58 Tenn.), 450, 452; *Hollis* v. *Hollis,* 4 Baxt. (63 Tenn.), 524; *Harris* v. *Vaughn,* 2 Tenn. Ch., 483, 486; *Stratton* v. *Perry & Dumont,* 2 Tenn. Ch., 633. The vendor's equity is not extinguished by assignment of the obligation which represents it. *Cate* v. *Cate* (3 Pick.), 87 Tenn., 41, 9 S. W., 231; *Bowlin* v. *Pearson,* 4 Baxt. (63 Tenn.), 341; *Adams* v. *Brown,* 4 Baxt., 124.

If, notwithstanding the assignment the vendor's liability for the debt persists by means of indorsement, guarantee, suretyship, or in any other form, and he subsequently reacquires the debt, his lien revives and may be enforced. *Green* v. *Demoss,* 10 Humph. (29 Tenn.), 371; *Hollis* v. *Hollis,* supra.

So, when the complainant reacquired this debt from the bank, his lien revived, and if the husband had lived there is no doubt the equity could have been enforced against him.

The husband having died, can it be enforced against his surviving wife, who was with him a holder of the land under a deed conveying it by the entireties?

The question is one of first impression in this State, and, so far as our investigations have enabled us to discover, it has not been treated in any other jurisdiction

except in Indiana, in the case of *Anderson* v. *Tannehill*, 42 Ind., 141. The facts of that case, however, were somewhat different from those presented in the case before us. In the Indiana case it appeared that a deed had been made to the husband and wife by the entireties, but they were both present and participated in the making of the contract. The husband, however, executed the note for the purchase money. Subsequently, in order to quiet the fears of another person interested in the purchase of an undivided half of the land (Anderson and wife having purchased the other half by the entireties), the name of the husband was erased from the deed and a note executed by the wife. The deed as changed was recorded. The change made by striking out the husband's name was assented to by the vendor, although made after delivery of the deed, and was suggested by the other party interested, one Becker, who feared that the deed as originally made to Anderson and wife and to himself might be construed as conveying to him only an undivided one-third, whereas, under the authorities, the husband and wife, under such a deed, took only an undivided half together, by the entireties, and the other purchaser the other undivided half. Tannehill assented to the change as being a matter required to satisfy one of his vendees, and regarded by him as not materially changing his own rights. The court held that the change was unnecessary, that the *status* was not altered so far as concerned the rights of Anderson and wife, that the note executed by the wife was void, but that the lien or equi-

ty could be enforced for the unpaid purchase money against her as well as against the husband. The court referred especially to the fact that the wife participated in the purchase, and held that while she could not sell her land without properly joining her husband, yet she might buy land, and, buying it, the land would be subject to a lien in her hands for the unpaid purchase money. In the case before us it does not appear that the wife actually participated in making the contract of purchase, and it does appear that the husband made the cash payment and executed his own notes for the deferred payments. It is a necessary conclusion, however, since the wife is relying upon the deed for her title, that she accepted this deed as one for her benefit. By this acceptance she became a party to the purchase, was thus a purchaser of the land equally with her husband, and thus recognized that in making the contract he acted for both. So, the wife falling distinctly within the definition of one who has bought land, the purchase money for which has not been paid, cannot resist the enforcement of the vendor's equity against the land.

It is observed that there is included in the original note a provision for an attorney's fee. . It is insisted in behalf of the defendant that a lien cannot be enforced for this. This is a mistaken view. It has been repeatedly held that the provision for an attorney's fee is part of the contract. It must be treated as a part of the purchase money agreed to be paid, in case

the expense of an attorney's fee should be properly incurred. *Merrimon* v. *Parkey,* 136 Tenn., 645, 655, 191 S. W. 327.

It results that the decree of the court of civil appeals must be in all things affirmed.