## DECKE *v.* BAKER.

### BAKER CLAY CO. *v.* DECKE.

1. CORPORATIONS—STOCK AND STOCKHOLDERS—PROMOTION STOCK—FRAUD—CONTRACTS.

   On a bill by a stockholder to compel a promoter to return to a corporation shares of stock issued to him by it in pursuance of a written contract between defendant and his associates in the organization of the corporation, on the ground of fraudulent representations to plaintiff in the sale of stock to him, evidence *held*, insufficient to sustain the charge of fraud.

2. SAME—BLUE-SKY LAW—SECURITIES.

   Whether the securities act (Act No. 143, Pub. Acts 1913)

applies or not, stockholders of a corporation may not object to the issuance of stock to a promoter, in pursuance of an agreement, upon fulfillment of the service agreed upon by him, where the State does not complain.

3. SAME—EQUITY—PUBLIC POLICY.

If the facts be conceded to be as claimed by the corporation in its cross-bill, there would be no ground for equitable relief, and, where no principle of public policy is violated, the parties will be left in the position in which they have placed themselves.

Appeal from Eaton; Wiest, J., presiding. Submitted April 16, 1918. (Docket No. 33.) Decided June 3, 1918.

Bill by George Decke against Eugene H. Baker and the Baker Clay Company to compel the return of corporate stock to defendant company and for an accounting. Defendant company filed a cross-bill asking the same relief. From a decree dismissing both bill and cross-bill plaintiff and cross-plaintiff appeal. Affirmed.

*Lyon & Moinet,* for plaintiff.

*Cassius Alexander,* for defendant company.

*Harry H. Partlow* (*Elmer N. Peters,* of counsel), for defendant Baker.

STONE, J. The original bill in this case was filed to compel the defendant Baker to return and deliver to the defendant Baker Clay Company, a corporation, certain shares of stock issued and delivered to him by said corporation, upon the theory that said stock was unlawfully issued and delivered. Also that in case said Baker had sold and transferred any of said stock that he account to the corporation for the same. The corporation was made a defendant in the original bill. It answered, admitting the allegations of the bill, and also filed a cross-bill, substantially containing the same

allegations as the original bill, so that the two cases practically involve the same issues, and were heard as one case.

The plaintiff in his original bill avers that in the summer of 1914 he was solicited and induced by the defendant Baker to subscribe for ten shares of the capital stock of a corporation to be formed, and paid $1,000 therefor; that the corporation was organized on January 5, 1915, and capitalized at $150,000; two-thirds common, and one-third preferred stock; all of the par value of $100 each. The original bill alleges that defendant Baker was the promoter of the enterprise, and induced the plaintiff to subscribe for such stock upon a representation that he, Baker, was to be connected with the management of the corporation and was to receive certain shares, to wit, $15,000 par value of the shares of stock, when the business of said corporation had become and was such that it was upon a 10 per cent. dividend paying basis; that no mention was made in said articles of association of any intention on the part of any one that Baker was to have or receive any of the shares of stock as "promotion stock"; that the attention of the proper State authorities was not called to the fact that it was intended that Baker was to receive certain shares of the stock as compensation for his services in and about the organization of the corporation, but, on the contrary, such matter was kept away from the attention of such officers, to the end that Baker might obtain from the corporation a certain large number of the shares of stock for, and as, "promotion stock," and in fraud of the State, and of the rights of other subscribers to the shares of such stock. After alleging a preliminary organization, prior to the execution of the articles of association, it is alleged that after the due execution of such articles, and after the election of a board of directors, and at a meeting of such board on February

1, 1915, a resolution was by unanimous vote adopted, to issue to defendant Baker $15,000 of stock, not more than 50 per cent. of which should be preferred stock; that afterwards, and at a meeting of said board of directors held on August 2, 1915, another resolution was adopted, reciting that said Baker had completed the sale of $120,000 of the stock of said corporation during the month of June, which stock had been fully settled for, and that therefore in compliance with the original agreement with said Baker, there should then and there be issued to him sufficient stock of said corporation, so that he should have been paid for his services a total of $30,000 in stock of said company; and that said stock was issued to Baker accordingly.

Defendant Baker, in his answer, denied that he ever made to the plaintiff, or to anybody, the representations alleged in the bill, but claimed that said stock was issued in accordance with the plan and statement in writing, made a part of the original stock subscription agreement, signed by all subscribers.

Upon the hearing the plaintiff testified that he never saw, or heard of the "statement," attached to the subscription list. Referring to defendant Baker he testified:

"He said to me that the company was capitalized at the sum of $150,000, that $120,000 should be sold, and that he should receive $30,000. * * * I said to him that the amount that he received for his services seemed out of proportion to the amount for which it was capitalized, and the services which he would be liable to render on such an occasion. He said to me that he was to have $15,000 of the stock when all the stock was issued, that he was to have the balance of it when the company was upon a 10 per cent. net dividend paying basis; that he would work for the company at a hundred dollars per month until the company was also on a 10 per cent. net paying basis, if they wanted him to, and subsequently he would expect to receive more compensation. * * *

"*Q.* Did you read anything beyond your subscription—the statement at the back?

"*A.* No, sir."

He also testified that he relied upon the statement. It was conceded that the company has never been placed on a 10 per cent. dividend paying basis.

The learned circuit judge, who heard and saw the witnesses testify at the hearing, filed an opinion which so fully covers the issues involved that we quote therefrom as follows:

"Mr. Decke, as a stockholder of the Baker Clay Company, claims that the company directors have exceeded their authority and violated the law of the State in granting defendant Baker $30,000 of the shares of stock of the corporation for claimed services in promoting and perfecting the incorporation; also that Baker made representation to him at the time of soliciting his subscription for stock that $15,000 of the stock was not to be issued to Baker until the corporation was on a business basis paying dividend of 10 per cent. upon its stock.

"It appears that Mr. Baker was the originator of the idea of forming the clay product company organized under the name of the Baker Clay Company.

"After preliminary examinations of the quality and quantity of clay upon a certain farm, Mr. Baker obtained a purchase option from the owner and started to get parties interested in subscriptions for stock in a corporation to be organized.

"Subscriptions for stock were solicited by Mr. Baker, and persons were asked to sign for the same upon a paper having a typewritten heading briefly describing the intended purpose of organizing a corporation.

"This heading also referred to an annexed statement, making its conditions a part of the agreement under which stock was subscribed, the heading being as follows:

" 'The subscribers to the stock for the purpose of providing working capital stock for the Baker Clay Company, the corporation to be organized under the laws of the State of Michigan for the purposes and on the conditions as set forth in the annexed statement hereby severally subscribe, etc.'

"The material part of the annexed statement is as follows:

" 'Fourth: Said Eugene H. Baker is to have charge of the completion of the organization of said company and the sale of the capital stock, and for his services in making the preliminary investigations of the character and quality and extent of the clay material on said lands, and in procuring the options for the purchase of the same, which options are to inure to the benefit of said company, and for the doing of the various things incident to the formation of said company and the sale of its capital stock, said Baker is to receive twenty per cent. of the gross amount of stock issued by said company.'

"This statement also provided in substance that Baker should remain with the company until the business was on a 10 per cent. dividend paying basis on its common stock.

"Plaintiff claims that Baker came to him, solicited his subscription and informed him that he, Baker, was to have $30,000 of the stock of the company, $15,000 of which was not to be issued until the company was on a dividend paying basis of 10 per cent. of its common stock. He claims that he did not read the paper, but relied upon Baker's representation and subscribed for $1,000 of the stock, and after the organization of the company he paid $1,000 for his stock, and later learned that the board of directors authorized $30,000 of the stock to be issued to Baker for his services in promoting the corporation, and that the corporation was not then and never has earned any dividend. Defendant Baker denies all misrepresentation.

"I am satisfied that the statement was attached to the subscription paper when it was signed by the parties agreeing to take stock, and it, therefore, became a part of the agreement under which stock was to be issued.

"The testimony relating to representations made by Baker necessarily rests upon recollections of words claimed to have been spoken some little time ago.

"The statement attached to the subscription paper provided that Baker should remain with the company until the business was on a 10 per cent. dividend paying basis on the common stock. This, however, did

not make his right to have $30,000 of the stock contingent upon the business paying a 10 per cent. dividend.

"Mr. Ewing, a witness for plaintiff and a subscriber for stock, testified that Baker informed him that he, Baker, was to have $30,000 of the stock, but would not claim $15,000 of it until the company was on a 10 per cent. dividend paying basis, and he subscribed for stock believing the law would not allow Baker $30,000 of the stock.

"Mr. Shane, also a witness for plaintiff and a subscriber for stock, and one of the original directors of the company, and now its vice president, testified that Baker told him that he was to have 20 per cent. of the stock for his efforts, and he informed Baker that it was too much, but subscribed and had the subscription paper in his possession, and there was no statement attached showing stock was to be given Baker, and he never saw or heard of such statement until the day of the hearing.

"The records of the corporation show the following resolutions introduced by Mr. Shane:

"'February 1, 1915. The following motion was offered by D. D. Shane and supported by A. E. Lambie: "I move that in view of the fact that E. H. Baker has secured cash subscribers to the Baker Clay Company's stock amounting to more than $100,000, of which more than $87,000 has been paid in, and that as the subscription paper signed by each subscriber provided that E. H. Baker should receive 20 per cent. of the stock of the company as remuneration for his efforts, it is the sense of the directors that there should now be issued to E. H. Baker stock to the amount of $15,000, not more than 50 per cent. of which shall be preferred stock." Motion carried by unanimous vote of directors.

"'August 2, 1915. "Moved by D. D. Shane and supported by A. E. Lambie, that as E. H. Baker has completed the sale of $120,000 of the stock of this company during the month of June, which stock has been fully settled for; therefore, in compliance with the original agreement with said E. H. Baker there should now be issued to him sufficient stock so that he shall have been paid for his services, a total of $30,000 in the stock of the company." Motion carried.'

"The best test to apply to the conflict of the testi-

mony in reference to the corporation and Mr. Baker and his associates in the organization thereof, and the value of Mr. Baker's labors, and the contractual relation between all parties in the absence of fraud, is the action of the corporation itself through its proper officers in granting Baker just exactly what he was to have under the writing and what he claims he was to get.

"Plaintiff does not seek to avoid his subscription because of fraud in inducing him to sign, neither could he do so now considering his subsequent action and ratification by way of this bill in aid of his rights as a stockholder. He does seek to have the court declare the rights of Baker to be such only as he claims Baker represented the same to him. If the other subscribers fully understood the agreement, then to hold there was a different agreement because of a representation made to plaintiff would change the contract between Baker and all others as well.

"If no principle of public policy has been violated in this matter, then I am inclined to leave the parties just where they have placed themselves. I find no principle of public policy violated by the issuance of the stock to Mr. Baker and nothing shown to Mr. Baker, and nothing shown to authorize the court to set aside the action of the directors.

"Mr. Baker, as originator and promoter of the scheme to organize and operate a clay product plant, may have for his pains whatever his associates in the organization agreed he should have, and the corporation through its directors has given him, unless this runs counter to the securities law or he has been guilty of fraud in bringing it about.

"The value of a promoter's services is not to be measured as upon a *quantum meruit*, if the persons in interest have expressly agreed to the compensation and their officers have carried the same out.

"Having in mind all of the evidence, the court is unable to find the fraudulent representation claimed.

"Section 20 of the Michigan securities act (Act No. 143, Pub. Acts 1913[1]) provides:

[1] Repealed by Act No. 46, Pub. Acts 1915; see 3 Comp. Laws 1915, § 11947.

" 'Nothing in this act shall be construed as applicable to the issuance by a corporation of a stock dividend to its stockholders, nor to the issuance of stock by a corporation to the original subscribers to its articles of incorporation.'

"It is contended by plaintiff that this does not exempt the issuance of stock to subscribers to the capital stock who have not actually signed the articles of incorporation.

"This construction is too narrow. If 30 persons agree in writing to take stock in a corporation to be organized, and 10 of them execute articles of incorporation to carry out the plan and purpose of all, then the prohibition of the securities act does not extend to any of the 30, for the corporation is the creation of all.

"Subscribers are not purchasers of stock within the purview of the securities statute; they are creators of the corporation as much as are those who execute the articles of incorporation in behalf of all.

"The legislature fixed a point beyond which the securities act should apply, leaving all before that point as without the statute and the mere work of the organizers of the corporation, because such stockholders are in a position to be able to know all about the corporation.

"The bills are dismissed."

An examination of the record leads us to agree with the circuit judge in his findings of the facts, where the testimony was conflicting.

It should be borne in mind that here the contemplated plan or agreement was carried out and fully executed by the corporation and the parties, and the stock was issued and delivered to the defendant Baker by direction of the corporation. The State authorities are not here complaining, and under the circumstances the plaintiffs are in no position to complain, whether the securities act applies or not. It is not necessary to decide whether the securities act would apply were this a timely proceeding to enforce its provisions. These bills were not even filed to set aside the scheme

or plan, for fraud or violation of the statute, but were in affirmance of the same, save as to the stock issued to the defendant Baker. If the facts were conceded to be as claimed by the cross-plaintiff, Baker Clay Company, there would be no ground for equitable relief as to it, but the parties would be left in the position in which they have placed themselves. *Walhier* v. *Weber*, 142 Mich. 322,. 325; *Benson* v. *Bawden*, 149 Mich. 584; 4 Thompson on Corporations (2d Ed.), § 3916; 9 Cyc. p. 546.

We agree with the conclusion of the circuit judge. The decree is affirmed, with costs to the defendant Baker.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.