PLANTERS' WAREHOUSE CO. *v.* E. M. SENTELLE.

(*Knoxville.* September Term, 1923.)

1. CORPORATONS. Increased in capitalization after organization not grounds for denial of liability on subscription.

   An increase in the capitalization of a corporation by amendment subsequent to organization is not grounds for denial of liability on a previous stock subscription. (*Post, p.* 355.)

   Case cited and approved: Newport Cotton Mill v. Mims, 103 Tenn., 465.

2. CORPORATIONS. Misrepresentations in securing stock subscription held insufficiently established.

   Where a subscription to corporate stock was made in writing, and its terms clearly stated, where defendant was a man of business experience, *held*, that misrepresentations in securing the subscription wert insufficiently established. (*Post, pp.* 355, 356.)

3. CORPORATIONS. Purchase of realty at excessive price by corporation no defense to action on subscription by purchaser of stock.

   That a corporation purchased realty .at an excessive price is not a defense by a stockholder to an action to recover on his subscription. (*Post, pp.* 355, 356.)

4. CORPORATIONS. In absence of fraud or gross negligence, inability to collect particular subscriptions not grounds for denial of liability by other subscribers.

   The fact that $3,000 of a total subscription of $50,000 was not collectible was not a defense in an action against other stockholders on their subscriptions in the absence of fraud, gross negligence. or any showing that stockholders whose subscriptions were obtained were insolvent at the time. (*Post, p.* 356.)

5. LICENSES. Requisites necessary to bring transaction within Blue Sky Law stated.

148—Tenn. 23

In order to bring a transaction within the Blue Sky Law, it must appear either that the sale of stock was made by a corporation so organized or so conducting business as to constitute it an investment company within section 1, or that the person making the sale was selling the stock of such an investment company as provided in section 13; the test being in each case whether the corporation, copartnership, company or association was organized for the purpose or was engaged in the business of selling stocks or other securities. (*Post, pp.* 325-357.)

Acts cited and construed: Acts 1913, ch. 31.

6. **LICENSES. Transaction held not within Blue Sky Law.**

Where at the time of sale of stock of a proposed corporation no charter had been procured, and where it was intended that the corporation when organized should sell stock or other securities, *held*, that the transaction was not within the Blue Sky Law. (*Post, pp,* 357, 358.)

Case cited and distinguished: Goodyear v. Meux, 143 Tenn., 287.

---

FROM GREEN.

---

Appeal from the Chancery Court of Green County.— HON. HAL H. HAYNES, Judge.

J. E. BIDDLE, for Planters' Warehouse Co.

J. A. SUSONG and A. N. SHOUN, for Sentelle.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was filed to collect a subscription to the capital stock of the complainant corporation in the sum of

$1,000.  The chancellor held the defendant liable; and he has appealed, assigning errors on several grounds.

The first point raised is that the capital stock was increased from $50,000 to $75,000 after the subscription had been made and without the consent of the defendant. The facts of this case do not bring it within the rule announced in *Newport Cotton Mill* v. *Mims*, 103 Tenn., 465, 53 S. W., 736, relied on by defendant, as it appears from the record that the capital stock was originally fixed at $50,000, this amount being fixed in the charter, and the company being organized on this basis, the increase to $75,000 being made by subsequent amendment.  Whatever remedy a dissenting stockholder may have for an increase of the capital stock of a corporation he may not on this ground deny liability for his subscription when the increase has been brought about, as in this case, by action subsequent to the original organization.

In the second place, it is insisted that the subscription of defendant was obtained by such misrepresentations as to relieve him of liability, but an examination of the record fails to sustain this contention.  The subscription was made in writing, and its terms were very clearly made to appear.  The defendant is shown to have been a man of business experience, and, having been register of the county, was necessarily particularly experienced in the examination and analyses of documents of all kinds.  No sort of misstatement is proven to have been made to him by Mr. Russell, who obtained his subscription, and the contract for the payment of $5,000 in stock of the corporation for certain services was fully set out.  If the defendant did not read this instrument he certainly is not

in position now to complain. He had every opportunity to do so. Moreover, this contract is conceded by the plaintiff to be his principal ground of objection, and it appears from the record that it was never executed, in that no part of this stock so contracted to be issued has in fact been issued to the parties. Complaint is made of the manner in which funds of the corporation have been expended, particularly in the purchase of certain real estate at an excessive price, but these are not matters which afford a basis for a defense by a stockholder to an action to recover his subscription. Ample remedy is provided for relief in cases where negligence or fraud can be shown on the part of the management.

In the third place, it is insisted that the defendant should be relieved of his subscription because $50,000 in valid and solvent subscriptions were not obtained. It does appear that perhaps $3,000 of the total subscription was not collectible, but there is neither allegation nor proof that any of the stockholders whose subscriptions were obtained were insolvent at the time. In the absence of fraud or gross negligence, this defense is not available. As to all of these defenses, this court agrees with the finding of the chancellor as set out in his decree.

The fourth assignment raises the question of the applicability of what is known as the Blue Sky Law, being chapter 31, Acts of First Extra Session 1913 (Shannon's Code, sections 3273a121-3273a136). It is insisted that the transaction involved in this case was within the provisions of this act, and that, the terms of the act not having been complied with, there can be no recovery on the subscription. In order to bring this transaction within

this act it must appear, either that the sale of this stock was made by a corporation so organized, or so conducting business, as to constitute the corporation an investment company under the definition thereof given in section 1 of the act, or that the person making the sale was selling the stock of such an investment company, as provided in section 13 of the act.

At the time this sale was made the corporation was not in existence. No step had been taken to procure a charter, nor was it in the contemplation of the parties proposing to associate themselves for the transaction of the business in mind that, when a charter should be obtained and the corporation organized, stock or other securities would be sold or negotiated by it. No sale of stock was contemplated as a part of the business for which this corporation was to be organized. Obviously, in such a situation there could not and need not have been any compliance with the requirements of the act of 1913. It is clear that the taking of this subscription was not a sale of stock by an investment company as defined by that act. Also it necessarily follows that Mr. Russell, the person who solicited the defendant's subscription, did not at the time and under the circumstances sell to the defendant stock of an investment company as defined by this act.

The case of *Goodyear* v. *Meux,* 143 Tenn., 287, 228 S. W., 57, is readily distinguishable from the one now before us. The sales were made in that case by agents employed by the corporation after its organization in Delaware for the express purpose of selling its securities; and it was quite apparent that the corporation was engaged in the business in pursuance of a well-defined and actively pro-

moted plan of selling stock. The test arising on the facts of each case is whether or not the corporation, copartnership, company, or association, whether foreign or domestic, is organized for the purpose, or is engaged in the business, of selling stocks or other securities. The object of the law is to protect the investing public. Is it a material part of its plan of promotion or operation to place its own or other stocks or securities on the market for sale to the public? If so, it must comply with the provisions of the Investment Company Act; otherwise not. The decree of the chancellor is affirmed.