TENNIE STRONG *v*. EFFICIENCY APARTMENT CORPORATION, *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed May 25, 1929.

338

E. L. McNeilly, and W. E. Steger, for complainant.

W. P. Cooper, Clyde Shropshire, C. H. Warwick, O. W. Hughes, John J. & Wm. O. Vertrees, John M. Cate, and G. S. Moore, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

In this cause the Chancellor set aside a sale by complainant to defendant Corporation of her real estate in

Nashville, on which she resided, because obtained by fraudulent representations. From this holding there was no appeal. Here the issues relate alone to two mortgage claims of defendants Rucker & Cartwright and Dillon & Company for money loaned to the corporation after its deed was executed and recorded. The Chancellor and Court of Appeals found that both of these mortgagees were innocent of any participation in or knowledge of the fraud in the sale to the defendant corporation.

The Chancellor decreed in favor of both the respective mortgagees for the sums loaned by them to the corporation, but denied recovery, as against complainant's land, of attorneys fees, as provided for by the mortgage contracts. His decree was affirmed by the Court of Appeals as to Rucker & Cartwright, but reversed as to Dillon & Company. That Court was of opinion that the Efficiency Apartment Corporation came within the Blue Sky Law (Chap. 31, Acts of 1913, First Extra Session), had failed to comply therewith, and that both the mortgagees were chargeable with constructive notice of this obligation and failure to comply, and with notice from the face of the deed of complainant to the corporation that a sale of its stock was involved in the transaction. However, Rucker & Cartwright were allowed to recover on the theory that complainant had estopped herself from setting up her defense to their claim by the execution of a certain affidavit certifying the title in the corporation, which was delivered to Rucker & Cartwright upon the making of their loan; but Dillon & Company having acted without knowledge of this matter, the estoppel was held not to extend to them.

Petitions for *certiorari* have been granted and argument heard on behalf of the complainant, Rucker & Cart-

wright and Dillon & Company. The complainant challenges here the decree sustaining the mortgage debt of Rucker & Cartwright, who in turn complain of the denial by both courts of their attorney fees, while Dillon complains of the denial of both his mortgage debt and attorney fees.

The first question for determination by this Court is this: Is the Efficiency Corporation an investment company, within the provisions of the Blue Sky Law, and, if so, are these mortgagees chargeable with notice of its failure to comply, and therefore to be repelled?

█ The act known as the Blue Sky Law was reviewed and held constitutional in *Biddle* v. *Smith,* 148 Tenn., 489. Therein this Court said: "The Tennessee statute classified as investment companies every corporation, copartnership, company and association organized for the purpose of, or engaging in the business of, selling stocks, bonds, or other securities of any kind." This quoted excerpt omits mention of certain exceptions, immaterial both in that case and in this.

█ In *Planters Warehouse Co.* v. *Sentelle,* 148 Tenn., 358, it was said: "The test arising on the facts of each case is whether or not the corporation, . . . is organized for the purpose, or is engaged in the business, of selling stocks or other securities."

█ Now applying this test, it will be observed that an alternative situation is presented: It must have been organized for the purpose of selling stocks or securities, *or,* it must be engaged in this business. Inspection of the charter of this corporation discloses no such purpose. And while there is testimony to the effect that at, on and after its organization its officers and agents did offer some of its stock for sale, it is plausibly argued that the

selling of stocks or securities was not the *purpose* or *business* of the corporation, that the placing of its own capital with stockholders was an incident only of its organization, and that it is not therefore to be classed as an investment company within the contemplation of the Act. While the language of the Act is broad and comprehensive, it has not been generally construed or understood as having application to sales of its own stock made incident to the paying up of its capitalization by corporations organized for the prosecution of enterprises apart altogether from the business of *dealing in* securities. Original subscribers are held not to be purchasers of stock within the Blue Sky Law in *Decke v. Baker,* 201 Mich., 608, 167 N. W., 908, and *Menominee Community Bedf. Co. v. Rueckert* (Mich.), 222 N. W., 162. Altho rested mainly on a statute worded differently from ours, the principle applies.

But conceding that the offering of its stock, or a part thereof, to the public, by its agents, brought this corporation within the letter of this law, there is nothing to be found in the form or provisions of its charter which indicates or gives notice of such a purpose. The charter recites that the corporation was organized, "for the purpose of planning, building and equipping modern and efficient apartment houses. . . . and generally do all such business as is usually done in carrying on a contracting, building or real estate business," etc. It is of the contents of this recorded charter that these mortgagees may be held to have had constructive notice. The record contains no evidence of notice having been brought home to these mortgagees of the practice of making of sales to the public by its officers of its stock. Unless, therefore, the recital in the face of the deed to complain-

ant of $20,000 of the capital stock of the corporation as the consideration paid by the corporation to complainant, its vendor, for the land purchased of her should be held to bring notice home to these mortgagees that the corporation was an investment company within the contemplation of the Blue Sky Law, complainant's insistence in this regard must fail.

As quite properly said, this deed recital evidenced, not so much a sale of stock by the purchaser, as a sale of land by the vendor. She sold her land to a corporation having charter power to purchase for the identical purpose contemplated. It is generally recognized that a corporation may purchase lands for its corporate purposes and pay therefor in its own capital stock. Moreover, it is expressly provided in the form of charter adopted, set out in Chap. 474 of the Acts of 1903, that the capital stock may be paid for in "land at a fair cash valuation." And certainly, such an incidental and isolated transaction does not operate to bring a corporation so transacting within the terms of the Blue Sky Law. We therefore conclude that the learned Court of Appeals was in error in holding these mortgagees chargeable with notice of the violation of the Blue Sky Law by the corporation. This conclusion makes it unnecessary to consider the applicability of the doctrine of estoppel based on the affidavit of complainant, to which question much of the exhaustive brief of counsel for complainant is addressed.

We concur with the Court of Appeals and the Chancellor in their conclusion that the occupancy of the premises by the vendor at the time of the making of the mortgages may not be invoked to defeat their claims. While the authorities generally are somewhat in conflict, we approve the rule announced in *Curry* v. *Williams*, 38

S. W., 278, 283 (Court of Chancery Appeals, affirmed by this Court), wherein an exception is recognized to the general rule that the possession of land is notice of the possessor's title, or claim of title, where a vendor remains for a time in possession after giving a fee-simple deed with full covenants, which he permits to be duly recorded. This is consistent with the general policy and purpose of our registration laws. As well said in *Bloomer* v. *Henderson*, 8 Mich., 395, quoted with approval in *Curry* v. *Williams, supra,* "If a party executes and delivers to another a solemn deed or conveyance of the land itself, and suffers that deed to go upon record, he says to all the world: *'Whatever right I have, or may claim to have, in this land, I have conveyed to my grantee; and, though I am yet in possession, it is for a temporary purpose, without claim or right, and merely as a tenant at sufferance to my grantee.'* This is the natural inference to be drawn from the recorded deed, and in the minds of all men would be calculated to dispense with further inquiry upon the point. All presumption of right, or claim of right, is rebutted by his own act and deed. One of the main objects of the registry law would be defeated by any other rule." And see note (a) in 13 L. R. A. (N. S.) 117, citing cases from some fourteen states, including *Curry* v. *Williams, supra.*

The Court of Appeals treats the affidavit as giving cumulative support to its conclusion that the rule above stated should be given application here, but we think it unessential to look to the affidavit, since we find no facts or circumstances in the record sufficient to offset the solemn declaration of a duly registered deed that the vendor has parted with all rights in the lands conveyed. Her continued occupancy was consistent with the objec-

tive of the transaction, that is, the proposed improvement and development of the property, on the theory that she was holding for the corporate vendee, in which she held stock, until such development should take place.

Learned and diligent counsel have argued at length in this Court the proposition that the deed of complainant to the corporation, set aside for fraud, was not voidable merely, but void *ab initio*, and therefore a nullity from which no advantage can accrue, even to an innocent purchaser. This issue turns largely on questions of fact, settled against this contention by the concurrent findings of the Chancellor and Court of Appeals, supported by evidence. As said by the learned Court of Appeals, the fraud was not "in the factum of the deed," but "in its inducement." Both courts found complainant sound of mind, and both found that she "knew that the paper she had signed and acknowledged was a deed," but that she was misled with respect to the character and value of the consideration. Moreover, it is doubtful if such a contention is consistent with the theory of the bill, which does not appear to charge a state of facts which would afford a basis for a holding that the instrument was void *ab initio*. We are satisfied with the reasoning and conclusion of the Court of Appeals on this issue. Even if the maker had been alleged and shown to have been *non compos* at the time of the making of the deed, the weight of authority is that the deed would not be void, but voidable only. *Pritchett* v. *Plater Co.*, 144 Tenn., at page 432.

It remains only to consider the question of the allowance of reasonable attorneys' fees, as provided for in the mortgage loans. The denial of these fees was rested by the learned Court of Appeals chiefly upon the proposition that this feature of the claim could not be

embraced within the protection of the doctrine of estoppel, which was applied by that Court to the claim of Rucker & Cartwright because of the execution by complainant of her affidavit, delivered to these parties upon the making by them of their mortgage loan. In view of the conclusion this Court has reached it has not been necessary to apply the equitable doctrine of estoppel, and therefore this reasoning has less, if any application. The rule is that attorney fees provided for in a note secured by mortgage are a constituent part of the obligation, secured alike with the principal debt. *Merrimon* v. *Parkey,* 136 Tenn., 645, 655. It is a part of the contract and the lien may be enforced for it. *Moore* v. *Cary,* 138 Tenn., 332, 343. While in *Merrimon* v. *Parkey, supra,* the question of the lien status of such fees as against true subsequent purchasers or incumbrances was reserved, the Court expressly disclaimed any intimation of approval of the exclusion of such fees from the enforcible lien of the mortgage even in such cases. And we find no satisfactory ground on principle or authority for discrimination against this plainly expressed constituent part of the obligation. In other cases later than those above mentioned this Court has recognized the contract for attorney fees as a part of the debt, just as is interest, enforcible by or on behalf of the holder, along with the principal mortgage. *Carolina Spruce Co.* v. *Black Mountain R. Co.,* 139 Tenn., 248 and *Nickey Bros.* v. *Lonsdale Mfg. Co.,* 149 Tenn., 408.

The decree of the Court of Appeals will be modified as herein indicated, and judgment will be entered in favor of Rucker & Cartwright and Dillon & Company for their debts, with interest, and reasonable attorney fees to be fixed by reference, unless agreed upon, to be paid out of

the funds in the hands of the Clerk and Master, who holds the proceeds of the property, sold pending this suit.

OPINION ON PETITION TO REHEAR.

The only matters presented by this petition which may be said to be new, in the sense of the rules governing petitions to rehear, relate to incidental details of the decree. Extensive and able reargument is made of the controlling questions dealt with in our original opinion, namely, (1) the application of the Blue Sky Law, (2) the effect of the continued occupancy by the grantor of the premises, (3) whether the deed was void or voidable, and (4) the allowance of attorney fees. The Court is satisfied with its determination of these main issues for the reasons set forth in the original opinion.

However, to avoid possible misconstruction of language used introductory to the decision of the question of the application of the Blue Sky Law (not strictly necessary to the decision), this is said: The holding was and is that, *conceding* that the offering of this Company's stock, or a part thereof, to the public, by its agents, brought this corporation within the letter of the Blue Sky Law, there is nothing in the provisions of the charter indicative of a purpose to engage in the business of selling securities, and there is no proof of knowledge by the mortgagees of the making of sales to the public, so that the mortgagees were not chargeable with either constructive or actual notice of the violation of this law, if violated. The comment made, introductory to this announcement of our decision, suggesting the inapplicability of the law to cases of sales made by a corporation of its own stock to original subscribers incidental to its organization, is not to be understood as holding that a corporation may not in any case subject itself to this law by making sales of its own

stocks and bonds, that is, those issued by it. The question in each case is whether or not the corporation is (1) either organized for the purpose of selling stocks or other securities, its own or otherwise, or, (2) engaged in the business of making such sales. Distinguishing analogies are to be found in our cases discussing what constitutes doing business in the State by foreign corporations, and by parties engaging in occupations declared to be privileges.

In reply to the suggestion that the many *contra* authorities cited by counsel touching the issue of notice to the mortgagees from the continued occupancy of the grantor were overlooked, it may be said that these were examined, but the Court approved the rule laid down in *Curry* v. *Williams,* cited, and supported by the cases contained in the note in 13 L. R. A. (N. S.) 117, and others.

The point is made that the corporation did not appeal and was not before this Court, and that the decree should not run against it. Petitioner is not affected and cannot complain. Moreover, since the corporation is confessedly insolvent, this is an immaterial matter.

In effect and essentially the decree is against the fund in Court, the proceeds of the land, substituted therefor, against which the lien of the mortgagees is sustained and enforced as to principal, interest and attorney fees, according to the contracts. We find no error in the decree for interest, nor are we able to agree with learned counsel that any part of the taxes, a prior lien on the land and the fund, is chargeable to the mortgagees. It results that the petition is dismissed.